May it please the Court, I'm Jim Anderson and I represent the appellant Lori Kadoch. Lori is the debtor's former spouse. I would like to reserve two minutes for rebuttal. This appeal asks whether the debtor can file a Chapter 7 bankruptcy to defeat Lori's right to the property awarded her by the divorce decree. The debtors claimed a $125,000 homestead exemption in the sale proceeds of the marital residence that the divorce decree had earmarked for the payment of joint marital debt. This Court must decide if Lori can enforce the decree for her own benefit as a party to the divorce. This Court must decide if Lori can compel the debtor to use his half of the sale proceeds of the marital residence. Bankruptcy courts have the ability to set aside or excuse judgments, right? That's part of what happens in a bankruptcy proceeding? Generally, yes, but not... Why should this divorce decree be different from another judgment? Because Lori's rights to enforce the decree are specifically non-dischargeable under the Bankruptcy Code and Lori's rights to enforce the decree vested pre-petition so that the property subject to her rights to enforce the decree never became an asset of the debtor's estate under Section 541 or is subject to an exemption claim under Section 540, 522 of the Code. So this Court must ask whether debtor can, Lori can compel debtor... We were just talking about the effect of a prior judgment, but the divorce decree was kind of fluid and flexible and even allowed Ms. Kedosh? Kedosh. Kedosh's husband, former husband, to stay in the property and pay rent if the property weren't sold. It seemed remarkably flexible to me, and unlike the kind of judgment debt that we were just talking about as a dischargeable one. Do you not see any distinction between the two? Well, as I said, the debt is non-dischargeable because Lori... I'm saying it's not really a debt because the divorce decree was so vague, really. I think it clearly is a debt that's non-dischargeable because the Supreme Court has stated that the definition of a debt under the Bankruptcy Code is extremely broad, and it includes the right to receive payment from property of the debtor. Here the decree ordered, here the decree, the debtor litigated in the divorce proceedings to keep the residence for himself. The family court denied him that relief, ordered both spouses to sell their interest in the property. The decree gave them both a one-half interest in the property, and it imposed on both an obligation to repay the loan. To sell the property. How is that a debt? How is it a debt? I mean, they both had obligations and responsibilities, but until the property was sold, how was there a... I have trouble understanding how there was a debt. Because it meets the Bankruptcy Code definition of a debt, which is broad enough to include the right to receive payment from property of the debtor. The decree ordered the debtor to sell his half of the marital residence and apply the proceeds to pay joint marital debt as ordered by the decree. That's a claim, that's a debt within the meaning of the Bankruptcy Code. And therefore, it's Lori's right to enforce that debt as non-dischargeable. Did the decree have a deadline in it on when he had to sell it? They were to proceed in good faith to sell as quickly as possible, and the debtor dragged his feet for three years and was held in contempt by the family court for proceeding in bad faith to find reasons not to sell the house. But it also explicitly envisioned the possibility that a sale wouldn't happen in a timely way and then imposed a rental payment obligation on him. That's true, Your Honor. Right, so it's a little more fluid than imposing a hard and fast deadline, even with a contempt decree, isn't it? Well, there was no hard and fast deadline, other than the debtor was to proceed in good faith to market and sell the property as quickly as market circumstances would permit. Okay. Lori's mother, Esther Cleneau, is one of the joint marital debts that the decree ordered paid, and the debtor's $125,000 homestead exemption reduces the sale proceeds available to pay that debt. This court should reverse the bankruptcy court's allowance of the debtor's $125,000 homestead exemption for three very specific reasons. Excuse me. She's deceased, right? Esther Cleneau is deceased. So it's her daughter that's seeking to enforce an obligation to her mother? No. The debtor is seeking to enforce her right to the property settlement under the decree, which required the sale of the proceeds, the sale of the house and the use of the proceeds to pay joint marital debt that Lori was obligated on. At least one of those debts was to the deceased mother, right? One of those debts was to the deceased mother. And so she is now in a position of trying to enforce that debt payment? Correct. The debt is now oweable. How does she do that if she's not the mother? The mother's estate can enforce the collection of the debt. But before I get to the three specific reasons, I would like to point to the general error that the bankruptcy court made and that permeated its entire decision. The bankruptcy court erred because it failed to distinguish between Lori's right to enforce the divorce decree for her own benefit as a party to the divorce and the rights of her mother, Esther Cleneau, to enforce her judgment lien against the debtor's homestead as a third-party creditor. Lori's rights to enforce the decree for her benefit are nondischargeable under Section 523 of the code. Esther Cleneau, on the other hand, was not a party to the divorce, and her judgment lien is potentially avoidable under Section 522 of the bankruptcy code. The bankruptcy court was confused by the fact that Esther Cleneau was the incidental beneficiary of Lori's right to enforce the decree. What does that mean? It means that by Lori enforcing her rights. No, no. What is incidental beneficiary? It means that she. Excuse me. They gave them $200,000, right? The loan was for $200,000. Right. So what is an incidental beneficiary? As opposed to a third-party beneficiary, Esther Cleneau had no right to enforce the decree on her own behalf. Correct. But she did receive the benefit of payment of her debt when Lori enforces the divorce decree for her own benefit by compelling Mr. Kadosh to pay the joint, to use the proceeds from the sale of the residence to pay the joint debt as he is ordered by the decree. It's pretty complicated. It is, Your Honor. Attenuated, I would think. No. It's just a literal application of the party's rights and liabilities under the bankruptcy code. Bankruptcy is complicated, but it's not attenuated, Your Honor. The fact that Esther was an incidental beneficiary does not alter Lori's right to enforce the decree for her own benefit under the bankruptcy code. And I think my time is up. Thank you, Your Honor. Mr. Anderson. Mr. Anderson, you should be on that side. Yeah. Sorry about that. Good morning, Your Honors. I'm Jennifer Emmons Butler. I represent the appellee in this matter. Your Honors, this is a simple bankruptcy matter, and as most appellees would contend we shouldn't be here, I would contend the same. We shouldn't be here. I don't know if there's such a thing as a simple bankruptcy matter. Well, Your Honor, yes. But we would urge this court to uphold the bankruptcy court not once but twice, because there was a motion to reconsider, and the district court when it properly used federal jurisdiction to determine the property right, the property of the estate of the debtor, and the distribution of that debtor's property to his creditors. The appellant has three branches of his arguments, the preemption argument, the property of the estate argument, and the discharge argument. And somehow has attempted to push them all together in a way that confuses the simple bankruptcy facts that are before us. This debtor was forced into bankruptcy. Sounds like the facts say there was a motion to compel. There was. But at one point the parties all agreed that the property was worth a certain amount, and as time passed there wasn't enough to go around, and in a unique circumstance the debtor was being strong-armed by a creditor and the co-owner working together to get him to lower the price, and when it was apparent that there wasn't enough to pay. Did he agree to this arrangement? He agreed that he would sell. He agreed on how the proceeds would be whacked up, and then he does seem to be trying to avoid his agreement by going into bankruptcy. Correct, Your Honor, but bankruptcy serves a specific purpose, and they had invested over $700,000 in the property. They thought it was worth that much at the time, and time passes the property wasn't worth that much, and he was getting pressure to lower the price to the point where he couldn't pay his student loans, couldn't pay the credit cards, and couldn't pay Ms. Clennaught in full. And being the most aggressive creditor, there was no room to sort of negotiate that down, and there wasn't enough equity in the property to satisfy everybody. So he came to the bankruptcy court with all of his property and all of his debts, and he said, bankruptcy court, what do I do with this? Please help me distribute, balancing my right to a fresh start, which bankruptcy affords, with all the rights of all the creditors, not just Ms. Clennaught, who happens to be his ex's mother, making her particularly aggressive and aligned with the co-owner. So he did. His right to a fresh start outweighed the agreement he had previously made in the divorce proceedings? Well, Your Honor, the divorce didn't really change anything. They were joint owners beforehand, and they had joint debts beforehand. And the divorce order said, you've got all these properties, sell them, and you have property that could pay your debts, so sell them and pay the debts. So he didn't really change anything with that respect. There just wasn't enough to go around. But if the divorce decree itself had directed Lori to pay all the joint debts and directed David to sell the house and give her her half of the proceeds, wouldn't that be a non-dischargeable debt? I mean, if it had been framed differently, just a little more carefully with a directive and didn't have these other provisions, such as allowing him to stay in the property and pay, but was, you know, a clear directive, wouldn't that have an effect on the result we have here? It may have. It was framed, as Your Honor noted, very flexibly. It was very broad. And it didn't ñ it could have given Ms. Koudoshaline, and it could have ordered the title to her, but it didn't. It was very open, and it gave them both equal rights to this property. And let's say she did have a non-dischargeable claim against the debtor. It's an absolutely different issue than exemptions and property of the estate. If you have a non-dischargeable claim against a debtor, you still can't take their house. So the court was very clear in separating the discharge issue from the enforcement and lien issue and the rights that a debtor has when he comes to the bankruptcy court and he has all of his property thrown in, and the bankruptcy court determines what's property of the estate and who gets what and how do you distribute among creditors. So I think it could have, but it didn't. And the cases that appellant sites like Brooks and Forent, where it was clear there was a lien and there was a loser, the person who was deemed to hold it in trust for the winner doesn't have that property anymore. But in this case, just saying you have joint property and you own debt does not take that property out of the jurisdiction of the bankruptcy court. Was it joint property or tenancy in common, or does that make any difference? Vermont has tenancy by the entirety. So it's that legal fiction where they own it together, but as soon as they get divorced it turns into tenancy in common. So they both had essentially 50 percent. You were just saying joint tenancy. Correct, Your Honor. I mean tenancy in the entirety. The non-tenancy by the entirety definition of husband and wife owning property, but it does turn into tenancy in common when they get divorced. So this result suggests that a divorce lawyer counseling a client needs to be very hard-nosed and look for a non-flexible divorce decree that directs payment in order to protect against the circumstance occurring. Is that right? Well, if there were a winner, that winner should get a lien. It happens all the time. It happens all the time in bankruptcy where there's an order that says there's $50,000 in equity in the property, so you debtor need to refinance or sell and give it to your ex, and time passes, the property's not worth enough, and they go to the bankruptcy court, and in Chapter 13 at least, which is initially what we tried to do, you cannot pay all that if there's just not enough to go around. So the lien or some other right would be definitely more important and something that they should have done if there were a winner, but in this case there clearly wasn't a winner in state court or a loser. Joint property, joint debts, sell all your property and pay your creditors. Why wasn't there a lien or a debt for half of it? In other words, to the extent that you didn't own the half that you did not own. Why is there not a lien or a debt? There wasn't one ordered, Your Honor. I'm not sure what happened in the family court, but this argument that she had a right to enforce just isn't true because so did he. She had no right to his half. They each had half, and they each had to pay their debts. Okay. So, Your Honor, we would argue that, Your Honors, pardon me, that preemption does not apply because there was no state court loser. The parties were ordered to the property equally and pay their debts equally. The property, the estate argument that they're making, that somehow the bankruptcy court did not have jurisdiction over this property, doesn't really make sense in the context where they were both ordered to keep their property and they were both ordered to pay their debts. So if anybody was ordered to pay a debt, if that property were exempted from the bankruptcy estate, it would make no sense. The bankruptcy estate is very broad and includes all interests, legal, equitable, contingent, future, and that's what the bankruptcy court has jurisdiction over. Their third argument about the discharge, I think I touched on that a little bit, but it's very separate from enforcement, and it's not something that the debtor can, or, sorry, the appellant can enforce against the debtor with respect to his homestead. And, in fact, the appellant was very clear that a claim is a right to payment from property, but Ms. Kadosh did not have a right to payment. There was no payment ordered, and there wasn't any right from his property. They each got their half of the property, and it wasn't something that was ordered to attach in any way to the debtor's half. So when it became apparent that there wasn't enough to pay the mother, the debtor filed in an effort to try to figure out what the rights were among the creditors because it was a unique circumstance in this case that the co-owner happens to be aligned with the creditor, who was her mother, and if it weren't her mother, she could file and discharge it, but that's not the question. The question is, why is this particular debt? Oh, and I'm sorry, Your Honor, I forgot to mention that this particular debt has been avoided. I think it was in the record, but the actual order was entered post-appeal. The estate of Esther Kalanch did not challenge that lien avoidance, so the lien is definitely no longer on the property, and the debtor or the appellant is simply trying to enforce this obligation, either standing in the shoes of a third-party creditor that wasn't party to the divorce or some undefinable right to enforce a decree that didn't give her anything. So she's here asking for a claim that was never given, either in the divorce court or now, and not as part of the bankruptcy estate, and she should not be granted the ability to overturn clear bankruptcy court jurisprudence that was ruled on by the bankruptcy court twice and the district court. Thank you. Are there no more questions? Thank you, Your Honors. You should sit right here. Okay. We'll hear the rebuttal. The court correctly pointed out that debtors' right to a fresh start under the bankruptcy code does not negate his obligations under the divorce decree, the nondischargeable divorce decree, to sell the house and pay the joint debt. The bankruptcy court had no subject matter jurisdiction under Rooker-Feldman to reallocate property to the debtors. He was the loser. Was Kadush the debtor, the loser? Yes, he was, because in the divorce proceedings, it was a two-day trial. He asked the family court to award him title to the house. The family court specifically refused to do that, saying that he didn't have sufficient cash flow to retain the house and pay off the joint debt as required and to pay off the joint debt as the decree ultimately entitled him to do. He also lost on the issue that the Kadush obligation, the construction loan, was, in fact, a debt as opposed to a gift, as he maintained. The family court rejected that argument, ordered him to repay. The bottom line, though, was that it was 50-50. Ultimately, but he had asked that he be awarded the house completely. The family court rejected that request, ordered the parties to sell the house and to use the proceeds to pay joint marital debt. The debtor did not get the relief he asked for in family court. Therefore, he's a State court loser, which satisfies the first element of Rooker-Feldman. What's your strongest case for Rooker-Feldman? You cited to Callahan and to Brooks, both of which seemed to me quite distinguishable in that one sought the direct modification of a divorce decree, or they both did, one citing Federal law and the other citing the Vermont homestead exemption. So it was a directly seeking modification of a divorce decree. Here, that isn't really happening, I don't think. I think the answer to your question, Your Honor, is that the definition of a transfer or settlement under Vermont family law is extremely broad, and it covers any reallocation of either marital assets or marital debt. The facts of an award are different in each and every case. Here, the court ordered the parties to sell the marital residence and use the proceeds to pay joint marital debt. That is a transfer for family court purposes, which is not avoidable in bankruptcy. Doesn't your argument then suggest that any divorce decree, because they all involve property, is not can't be the subject of any subsequent bankruptcy because the divorce decree is going to be so wide? In Chapter 7, debtors have no right to avoid their obligations under property settlements. That's 523A15. In Chapter 13, the superdischarge of Chapter 13 allows debtors to rewrite their property settlement obligations. I don't have the precise site in mind, but the debtor is not in Chapter 13. He's in Chapter 7, where his ability to avoid his property settlement obligations is prescribed and prohibited. Okay. Thank you.